UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH BROOKING,

                              Plaintiff,                    1:15-CV-0510
                                                           (GTS/CFH)
v.

NEW YORK STATE DEP'T OF TAXATION
& FIN.; THOMAS MATTOX; and JAMIE
WOODWARD,

                              Defendants.
_____

APPEARANCES:                              OF COUNSEL:

SUSSMAN & WATKINS                         CHRISTOPHER D. WATKINS, ESQ.
  Counsel for Plaintiff
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924

ERIC T. SCHNEIDERMAN                      ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this employment discrimination action filed by Joseph

Brooking ("Plaintiff") against the New York Start Department of Taxation and Finance, Thomas

Mattox, and Jamie Woodward (collectively, "Defendants"), is Defendants' motion to dismiss

Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed.

R. Civ. P. 12(b)(6).  (Dkt. No. 17.)  For the reasons set forth below, Defendants' motion is

granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, in his Complaint, Plaintiff alleges as follows.  (Dkt. No. 1.)

#### 1.    Plaintiff's Employment

Plaintiff, a 60-year-old African American male, has been employed by the New York State Department of Taxation and Finance ("the Department") since 1988.  (*Id.* at ¶ 9.)  In 2009, Plaintiff was appointed to serve as the Department's Director of the Office of Diversity and Affirmative Action ("ODAA").  (*Id.* at ¶ 11.)  Prior to Plaintiff's appointment, ODAA had only one staff member, who was "tasked with handling EEO [equal employment opportunity] complaints and investigations for the entire Department of 5,600 employees."  (*Id.* at ¶ 14.)

Under Plaintiff's direction, ODAA "created a new website, founded a diversity council and built an electronic hiring system."  (*Id.* at ¶ 16.)  ODAA also developed formal procedures for conducting investigations of EEO complaints.  (*Id.* at ¶ 17.)  ODAA received praise both "internally and externally," including, in 2010, an award from the Capital Region's Human Resource Association for ODAA's "creativity and innovation."  (*Id.* at ¶ 18.)

In early 2011, Defendant Thomas Mattox ("Mattox") became Commissioner of the Department.  (*Id.* at ¶ 19.)  At some point thereafter, the Department's Buffalo District Office ("DO") was the subject of "numerous complaints of race and gender discrimination."  (*Id.* at ¶ 21.)  Plaintiff and other ODAA staff members developed a strategy to address those concerns, which included "several 'town hall' style meetings" to be held at the Buffalo DO, training sessions, and focus groups.  (*Id.* at ¶¶ 22-23.)

On November 26, 2012, the Department held the first Buffalo DO town hall meeting, which was attended by Mattox and "directors of other district offices." (*Id.* at ¶ 24.) Plaintiff spoke during the meeting; and, during a question-and-answer session, some Buffalo DO employees "voiced criticisms of" ODAA in general and of Steven McGough, an ODAA investigator, in particular. (*Id.* at ¶ 25.) McGough was an African American staff member of ODAA who was investigating specific complaints of discrimination arising in the Buffalo DO. (*Id.*)

### 2.    Removal of ODAA's Investigatory Function

Within a few days of the meeting, Defendant Jamie Woodward ("Woodward"), Executive Deputy Commissioner of the Department and the individual to whom Plaintiff reported, informed Plaintiff that ODAA "would no longer be investigating EEO complaints within the Department." (*Id.* at ¶¶ 7, 12, 26.) Woodward asserted that there were two reasons for this decision. (*Id.* at ¶ 27.) The first reason was that ODAA was "consistently tardy in responding to requests from the" Equal Employment Opportunity Commission ("EEOC") and New York State Division of Human Rights ("NYSDHR"). (*Id.* at ¶ 28.) In response to Woodward's first reason for relieving ODAA of responsibility for investigating EEO complaints, Plaintiff noted that the heavy workload and understaffing "occasionally led to a delay in responding," but that no case had ever been adversely affected by such a delay. (*Id.* at ¶ 28.) Plaintiff "also pointed out that other similarly-sized offices within the Department faced the same issue, but no other office had been stripped of their [*sic*] responsibilities as a result." (*Id.*)

The second reason cited by Woodward was that numerous employees had complained about the manner in which ODAA "handled EEO investigations," and "a number of" those

complaints concerned McGough specifically.  (*Id.* at ¶ 29.)  To that reason, Plaintiff responded

that McGough "was tasked with investigating complaints of discrimination," and complaints

about McGough made by "those who he was investigating (who were Caucasian) might be rooted

in discrimination."  (*Id.* at ¶ 30.)  Moreover, the majority of ODAA's employees were African

American, but the "vast majority" of the Department's employees–including nearly 90 percent of

the 215 employees in the Buffalo DO–were white.  (*Id.* at ¶¶ 31-32.)  Woodward "dismissed

[P]laintiff's concerns" regarding the complaints about ODAA and McGough, and advised

Plaintiff that the Department's Office of Internal Affairs ("OIA") would assume responsibility for

conducting EEO investigations.  (*Id.* at ¶¶ 33-34.)  At the time, OIA had no racial or ethnic

minorities on staff.  (*Id.* at ¶ 35.)

### 3.    Notice of Termination of Plaintiff's Employment

On January 10, 2013, Plaintiff and Robert Smith, an African-American ODAA employee,

met with Mattox at the Department's New York City office "in an attempt to dissuade Mattox

from transferring ODAA duties to OIA."  (*Id.* at ¶ 36.)  During the meeting, Plaintiff advised

Mattox that discriminatory attitudes were not limited to the Buffalo DO, but rather were

"widespread throughout the Department," and cited two examples.  (*Id.* at ¶ 37.)  First, in the

spring of 2012, the "head of the Syracuse DO" expressed a reluctance to hire the most qualified

candidate for an internship program because the candidate "was believed to be an ethnic

minority."  (*Id.* at ¶ 38.)  When Plaintiff pointed out to "the Syracuse director" that nearly every

employee in the Syracuse DO was white and that greater diversity would be beneficial, the

director replied sarcastically, "So, we might as well not interview white men in the future?"  (*Id.*)

Second, in late 2011 or early 2012, a "DO Audit Manager in Brooklyn" told Plaintiff that his

office had hired several employees of Asian descent because the DO Audit Manager "believed that they were 'docile and obedient,' generally 'easier to work with,' and 'they don't give you a hard time.'"  (*Id.* at ¶ 39.)

On February 7, 2013, Mattox advised Plaintiff that "his services would no longer be needed at the Department," and that the Department "wanted to go in a 'different direction' with the ODAA."  (*Id.* at ¶ 40.)  Plaintiff stated to Mattox that he had not planned to retire "for some time" and that he still "had four months left before he reached 30 years of service."  (*Id.* at ¶ 41.) Mattox assured Plaintiff that he would "be allowed to get that," and that Mattox would also "reach out on Plaintiff's behalf to the Governor's appointments office" if Plaintiff wanted to continue working for the State.  (*Id.* at ¶¶ 41-42.)  Plaintiff responded that he would appreciate Mattox's assistance and, on February 20, 2013, Plaintiff advised Mattox of "some positions outside of the Department for which he wanted to be considered[.]"  (*Id.* at ¶ 44.)

### 4.   Report of Continuing Concerns in the Buffalo DO

On February 28, 2013, Plaintiff received a telephone call from Jalisa Williams, an African American ODAA staff member.  (*Id.* at ¶ 45.)  Williams reported that she, Robert Smith and Nicole Moore (an African American "DO employee") had been conducting training sessions and focus groups in the Buffalo DO.  (*Id.* at ¶ 46.)  During a break, a "white male manager" approached Williams, Smith, and Moore, and asked if any ODAA "had any white employees" who could conduct the training sessions and focus groups instead because "the 'message' would be better received if it came from a white person."  (*Id.*)  The manager advised Williams that other Buffalo DO managers felt similarly, one of whom had asked, "Why do I have to be trained by black people?"  (*Id.* at ¶ 46.)  Williams also reported to Plaintiff that she had been approached

by two female Buffalo DO employees who complained of a different white male manager making "several sexist remarks" during a focus group.  (*Id.* at ¶ 47.)

Williams advised Plaintiff that she was "very upset by these racist and sexist comments," and Plaintiff directed Williams to summarize the incidents in writing so that Plaintiff could address them with "Mattox and others[.]"  (*Id.* at ¶ 48.)  Williams provided a written summary and, on March 1, 2013, Plaintiff sent the summary to Mattox, Woodward, and Department counsel Amanda Heller.  (*Id.* at ¶ 49.)  In so doing, Plaintiff did three things: (1) he reiterated that "discriminatory attitudes" were not limited to the Buffalo DO, but rather existed throughout the Department; (2) he expressed his suspicion that the "individuals who had made the racist comments reported by Williams" were the same individuals who had previously complained about McGough and ODAA; and (3) he "stated that the Department had to be prepared to take disciplinary action to demonstrate that the Department was committed to rooting out discrimination."  (*Id.* at ¶¶ 50-51.)

### 5.    Mattox's Threat to Provide Plaintiff with a Poor Recommendation

On March 8, 2013, Mattox spoke with Plaintiff by telephone and advised Plaintiff that he could either "retire in a few months" (i.e., once he reached 30 years of service), or Mattox could "let [P]laintiff go the following Monday."  (*Id.* at ¶ 52.)  Despite his earlier assurance that he would assist Plaintiff with finding another position with the State, Mattox advised Plaintiff that "he would give [P]laintiff a poor recommendation based on a bogus issue regarding [P]laintiff's time and attendance" if Plaintiff attempted to secure other State employment.[1]  (*Id.* at ¶ 53.)  In

---

[1]    Plaintiff alleges that, during the summer of 2012, Woodward advised Plaintiff that the Department was "investigating" Plaintiff's attendance during a period of two or three weeks.  (*Id.* at ¶ 55.)  Plaintiff further alleges that the investigation was "baseless" and that he provided the Department with "concrete proof of his attendance" during the period in question.  (*Id.*)

light of Mattox's threats of immediate termination and a poor recommendation if he attempted to

seek other employment, Plaintiff notified Mattox in writing that he would retire from State

service in June 2013 (i.e., once he reached 30 years of service).  (*Id.* at ¶ 57.)

### 6.    Plaintiff's Performance Evaluation

During the five-year period in which Plaintiff was director of ODAA, he never received a

written performance evaluation.  (*Id.* at ¶ 58.)  In May 2013, he received a written performance

evaluation, purportedly prepared by Woodward.  (*Id.* at ¶ 59.)  The evaluation rated Plaintiff's

performance as "unsatisfactory" and cited "baseless allegations" to support that rating, including

Plaintiff's disobedience.  (*Id.* at ¶ 59.)  Plaintiff met with Woodward on May 7, 2013, and, when

he told Woodward that he "took exception to the evaluation's allegation that he had been

disobedient, Woodward responded, 'I never said that.'"  (*Id.* at ¶ 60.)  Woodward "responded in

the same way" with regard to other "criticisms" in the evaluation, and it thus appeared that

Woodward had "neither written, nor ever read, [P]laintiff's performance evaluation."  (*Id.* at ¶

60.)

Based upon the foregoing, Plaintiff asserts the following claims: (1) a claim that the

Department retaliated against him "for complaining of racial discrimination within the

Department," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et

seq.*; (2) a claim that the Department subjected him to racial discrimination in violation of Title

VII; (3) a claim that Mattox and Woodward each subjected him to racial discrimination and

retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment of the

United States Constitution and 42 U.S.C. §§ 1981 and 1983; and (4) a claim that Mattox and

Woodward subjected him to racial discrimination and retaliation in violation of the aider and

abettor provision of the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296(6).  (*Id.* at ¶¶ 62, 67-69.)

> **B.     Parties' Briefing on Defendants' Motion to Dismiss**

> > **1.     Defendants' Memorandum of Law**

Generally, in support of their motion to dismiss Plaintiff's Complaint, Defendants advance four arguments: (1) Plaintiff's Title VII claims should be dismissed as untimely because he filed his administrative complaint with the EEOC on December 24, 2013, more than 300 days after the date he was notified that he would be terminated (February 7, 2013);[2] (2) all of Plaintiff's claims against Woodward should be dismissed because he has failed to allege facts plausibly suggesting that Woodward was personally involved in either Plaintiff's termination or the determination not to recommend Plaintiff for another position working for New York State; (3) Plaintiff's §§ 1981 and 1983 claims must be dismissed because (a) Plaintiff's Complaint fails to allege facts plausibly suggesting that his employment was terminated because of his race, and (b) Plaintiff's Complaint alleges other, nondiscriminatory reasons for Plaintiff's termination, specifically, ODAA was stripped of its responsibilities for conducting EEO investigations due to its tardiness in providing information to the EEOC and NYSDHR and complaints about the manner it in which it conducted those investigations; and (4) Plaintiff's retaliation claims must be dismissed because his Complaint fails to allege facts plausibly suggesting that he engaged in a

---

[2]     Plaintiff's Complaint alleges that he filed a timely administrative complaint with the EEOC, while he did not file those documents with his Complaint.  (Dkt. No. 1 at ¶ 8.) Defendants have attached, as exhibits to their motion to dismiss, Plaintiff's administrative complaint, filed with the EEOC on December 24, 2013, and the EEOC's Dismissal and Notice of Rights, dismissing Plaintiff's complaint as "not timely filed[.]"  (Dkt. No. 17, Attach. 1, at 17, 31.)

protected activity under Title VII or the NYSHRL.  (*See generally* Dkt. No. 17, Attach. 1 [Defs.' Memo. of Law].)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion to dismiss, Plaintiff advances five arguments: (1) his Title VII retaliation claim is timely because, within 300 days of the filing of his EEOC complaint, Mattox first advised Plaintiff that he would terminate him within days unless he agreed to retire, while also telling Plaintiff that he would give him a negative recommendation if he sought another State position; (2) his Title VII claims (both of retaliation and discrimination) are timely because the oral notice that his services "would no longer be needed," first received more than 300 days before he filed his EEOC complaint, was "indefinite," and he did not "know definitively that he would be terminated" until March 8, 2013 (i.e., also within 300 days of the filing of his EEOC complaint); (3) he has alleged facts plausibly suggesting that Woodward was personally involved in adverse actions taken against him, specifically, that Woodward informed him that ODAA was being stripped of its function of investigating departmental EEO complaints; (4) he has alleged facts plausibly suggesting that he was subjected to discrimination based upon his race in two ways, specifically, that (a) Defendants "acceded to the discriminatory attitudes of others within the Department who voiced displeasure with the racial make-up of the ODAA," and (b) Defendants subjected "[P]laintiff and his predominately African-American staff" to disparate treatment by assigning ODAA's "EEO investigative function" to "an all-white office, the OIA"; (5) he has alleged facts plausibly suggesting that he engaged in a protected activity in that he (a) complained (to both Woodward and Mattox) that the Department's decision to transfer the responsibility to conduct EEO

investigations to the OIA, "which was completely white," was apparently "rooted in discrimination," (b) complained of disparate treatment by noting to Woodward that "other similarly-sized offices" were not stripped of their responsibilities even though they had delays similar to those experienced by ODAA in reporting to the EEOC and NYSDHR, (c) complained of "widespread discrimination" within the Department, and (d) complained to Mattox, Woodward, and the Department's legal counsel about "specific acts of discrimination" directed at identified ODAA employees while they were at the Buffalo DO.  (*See generally* Dkt. No. 24 [Plf.'s Opp'n Memo. of Law].)

### 3.   Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendants advance five arguments: (1) Plaintiff's Title VII claims are time-barred because he filed his EEOC charge more than 300 days after he received notice of termination of his employment, and any other factual predicate for his claims, such as removal of ODAA's investigatory functions, occurred before that time as well; (2) any Title VII claim predicated upon the alleged threat that Plaintiff would be given a negative reference fails to state a cause of action upon which relief can be granted because Plaintiff does not allege that Mattox provided negative information about him to a prospective employer, or that he even applied for other positions; (3) Plaintiff has not alleged facts plausibly suggesting that he engaged in a protected activity outside of his job duties; (4) Plaintiff has not alleged facts plausibly suggesting that Mattox or Woodward were personally involved in any discrimination against Plaintiff; (5) Plaintiff has not alleged facts plausibly suggesting that Mattox or Woodward "acceded to" the discriminatory attitudes of others within the Department because (a) Plaintiff has not alleged that any employees complained of ODAA's manner of handling of investigations

based upon Plaintiff's race, and (b) any comments made by Buffalo DO employees during
training in February 2013 occurred after Plaintiff was notified of his termination and after
ODAA's investigatory functions had been removed.  (*See generally* Dkt. No. 25 [Defs.' Reply
Memo. of Law].)

## II.     GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief
can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:
(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a
challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d
204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de
novo* review).

Because such dismissals are often based on the first ground, a few words regarding that
ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a
pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to
relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  In the Court's view, this tension between
permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement
to relief is often at the heart of misunderstandings that occur regarding the pleading standard
established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading
standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at
212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by
requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2)

requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in

-12-

detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Id*. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

III.     **ANALYSIS**

     A.     **Whether Plaintiff's Title VII Claims Predicated on Events Occurring Prior to February 27, 2013, Must Be Dismissed as Untimely**

After carefully considering this matter, and for the reasons set forth in Defendants' memoranda of law, the Court answers this question in the affirmative.  (Dkt. No. 17, Attach. 1, at 3-4 [Defs.' Memo. of Law]; Dkt. No. 25 at 2-3 [Defs.' Reply Memo. of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff who wishes to pursue a federal employment discrimination suit under Title VII must file a charge with the EEOC within 300 days of the alleged unlawful employment practice or challenged discriminatory act.  42 U.S.C. § 2000e-5(e)(1); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004).  Plaintiff's EEOC charge was filed on December 24, 2013, and any claim based upon an allegedly unlawful employment practice that occurred before February 27, 2013, is therefore time-barred.  Plaintiff's Complaint alleges that he learned "[w]ithin a few days of" November 26, 2012, that ODAA would no longer be tasked with investigating EEO complaints within the Department."  (Dkt. No. 1 at ¶¶ 24, 26.)  Moreover, Plaintiff's Complaint alleges that, on February 7, 2013, he was notified, without equivocation, "that his services would no longer be needed by the Department," but that he would be permitted to reach 30 years of service, a milestone he was scheduled to reach in June 2013.  (*Id.* at ¶¶ 40-41.)  *See also Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000) ("In discriminatory discharge cases . . . the illegal act is often the decision to terminate the employee, and the limitations period begins to run on the date that the employer gives definite notice of that decision to the employee.").  Plaintiff was given definite notice that his employment was terminated (effective after he reached 30 years

service, if he chose to remain until that time) more than 300 days before his EEOC charge was filed.[3]  Accordingly, the Court concludes that any Title VII claim predicated on his termination or any event that occurred before that time is also time-barred and is therefore dismissed.

**B.    Whether Plaintiff's Title VII Claims Predicated on Mattox's Threat to Provide a Poor Recommendation to Prospective Employers Must Be Dismissed**

After careful consideration, and for the reasons set forth in Defendants' reply memorandum of law, the Court answers this question in the affirmative.  (Dkt. No. 25 at 3-4 [Defs.' Reply Memo. of Law].)  To those reasons, the Court adds the following analysis.

Plaintiff cites case law for the point of law that providing negative references regarding an employee in retaliation for the employee's participation in a protected activity may give rise to a Title VII retaliation claim.[4]  (Dkt. No. 24 at 7.)  However, conspicuously lacking from Plaintiff's Complaint is any allegation that (1) he actually sought other employment after his termination or (2) Mattox actually provided a negative reference to a prospective employer.  *See, e.g., Blutreich v. N. Shore-Long Island Jewish Health Sys., Inc.* 13-CV-8583, 2015 WL 1515255, at *4-5 (S.D.N.Y. Apr. 2, 2015) (concluding that plaintiff failed to state a Title VII retaliation claim where she alleged that defendant doctor and another doctor provided certain statements to

---

[3]      The Court notes that Plaintiff does not argue that any grounds for tolling this limitations period applies.

[4]      *See, e.g., Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178-79 (2d Cir. 2005) (explaining that a retaliation claim may lie where an employer "retaliatorily furnishe[s] a negative job reference" if plaintiff can establish that the reference constituted an adverse employment action); *Pantchenko v. C. B. Dolge Co., Inc.*, 581 F.2d 1052, 1055 (2d Cir. 1978) (per curiam) ("[A]ppellant's complaint clearly alleges that Dolge refused to provide her with post-employment reference letters in retaliation for her earlier filing of an employment discrimination charge with the EEOC.").

plaintiff's "reference checker," but "fail[ed] to make any non-conclusory factual allegations that [d]efendants made similar statements to actual prospective employers of Plaintiff's"); *cf. Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) ("Where . . . there is no admissible evidence that the statements of a former employer caused or contributed to the rejection by the prospective employer, the plaintiff has failed to present a prima facie case [of retaliation under the Americans with Disabilities Act].") (citing *Bailey v. USX Corp.*, 850 F.2d 1506, 1508 [11th Cir. 1988] [concluding that plaintiff failed to establish Title VII retaliation claim where he failed to prove that a prospective employer's failure to hire him was casually related to a negative reference by his former employer]).  As a result, the Court concludes that Plaintiff's Complaint does not allege facts plausibly suggesting that Defendants' retaliated against him by threatening to provide a poor recommendation to prospective employers state a Title VII claim based on his allegation that Mattox asserted that he would provide a prospective employer with a negative recommendation.[5]

    For these reasons, and the reasons set forth in Part III.A of this Decision and Order, Plaintiff's Title VII claims are dismissed.

---

[5]    Plaintiff alleges that he advised Mattox that "he would retire from State service" "[b]ased on" Mattox's "threats to immediately terminate" him and to provide a "negative reference" to prospective employers.  (Dkt. No. 1 at ¶ 57.)  However, Plaintiff's Complaint provides no further factual amplification regarding whether Mattox took any steps to carry out that threat or Plaintiff's efforts (if any) to seek other employment despite the theat.  Moreover, the Court notes that "[t]hreats of retaliation standing alone do not generally constitute adverse employment actions."  *Rivers v. New York City Housing Auth.*, 11-CV-5065, 2016 WL 1305161, at *16 (E.D.N.Y. Mar. 31, 2016) (citing *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 269 [E.D.N.Y. 2012]); *accord, Gross v. Home Depot U.S.A., Inc.*, 386 F. Supp. 2d 296, 298 n.2 (S.D.N.Y. 2005).

**C.     Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Mattox and/or
Woodward Subjected Him to Racial Discrimination**

After careful consideration, and for the reasons set forth in Defendants' memoranda of

law, the Court answers this question in the negative.  (Dkt. No. 17, Attach. 1, at 6-8 [Defs.'

Memo. of Law]; Dkt. No. 25 at 6-9 [Defs.' Reply Memo. of Law].)  To those reasons, the Court

adds the following analysis.[6]

In opposition to Defendants' motion, Plaintiff argues that his Complaint alleges facts

plausibly suggesting that he was subjected to racial discrimination in two ways: (1) Defendants

"acceded to the discriminatory attitudes of others within the Department who voiced displeasure

---

[6]        A few words on the various authorities cited in support of Plaintiff's claims is
appropriate.  Section 1981 of Title 42, United States Code, "outlaws discrimination with respect
to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such
as employment[.]"  *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004).
"Section 1983 'is not itself a source of substantive rights,' but "merely provides 'a method for
vindicating federal rights elsewhere conferred,' such as those conferred by § 1981."  *Patterson*,
375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 [1979]).  "Indeed, 'the
express cause of action for damages created by § 1983 constitutes the *exclusive* federal remedy
for violation of the rights guaranteed by § 1981 by state governmental units . . . .'"  *Id.* (quoting
*Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 733 [1989]).  "'A Title VII plaintiff is not
precluded from bringing a concurrent § 1983 cause of action,' such as a claim for denial of equal
protection, 'so long as the § 1983 claim is based on a distinct violation of a constitutional
right[.]'"  *Id.* (quoting *Gierlinger v. New York State Police*, 15 F.3d 32, 34 [2d Cir. 1994]).  There
are, however, "several significant differences" between Title VII claims and 42 U.S.C. §§
1981/1983 claims.  *Id.*  First, the statute of limitations applicable to §§ 1981 and 1983 claims in
New York is three years, rather than the 180- or 300-day periods applicable to Title VII claims.
*Id.*  Second, unlike Title VII, individuals may be held liable under §§ 1981 and 1983.  *Id.* at 226;
*accord, Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 151 n.6 (2d Cir. 2014) (explaining that
"[t]he substantive standards under [Title VII and 42 U.S.C. § 1981] are similar, but, unlike Title
VII, section 1981 permits a plaintiff, under certain circumstances, to sue persons other than
employers").  Third, "although in certain circumstances a Title VII claim may be established
through proof of a defendant's mere negligence, without a showing of discriminatory intent, a
plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must
show that the discrimination was intentional[.]"  *Patterson*, 375 F.3d at 226 (citations omitted);
*accord, Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012).

with the racial make-up of the ODAA," and (2) Defendants subjected "[P]laintiff and his predominately African-American staff" to disparate treatment by assigning ODAA's "EEO investigative function" to "an all-white office, the OIA."  (Dkt. No. 24 at 12-14 [Plf.'s Opp'n Memo. of Law].)[7]  The Court concludes that Plaintiff has not alleged facts plausibly suggesting that he was subjected to racial discrimination based on either of these arguments for four reasons.

First, Plaintiff's Complaint does not allege facts plausibly suggesting that Woodward or Mattox made any statements even remotely reflecting a discriminatory animus.  *See generally Boza-Meade v. Rochester Housing Auth.*, 14-CV-6356, 2016 WL 1157643, at *12 (W.D.N.Y. Mar. 21, 2016) ("Plaintiff has not provided any allegations that are racially-discriminatory on their face, nor has she provided any allegations that would raise the logical inference that she was being discriminated against[.]").  To the contrary, the only statements attributed to Woodward were his race-neutral explanations that ODAA was being relieved of its investigatory duties because ODAA was "consistently tardy" in responding to requests from the EEOC and NYSDHR and that employees had complained about the *manner* in which ODAA handled investigations. (Dkt. No. 1 at ¶¶ 28-29.)  Although Woodward also noted that McGough had been the subject of complaints, Plaintiff does not allege that Woodward conveyed any complaints about Plaintiff specifically.  (*Id.* at ¶ 29.)

---

[7]     "Discrimination claims under § 1981, § 1983, and NYSHRL are analyzed under the same framework and pleading standard as Title VII claims."  *Awad v. City of New York*, 13-CV-5753, 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2014) (citing *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 [2d Cir. 2010] and *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 [2d Cir. 2000]) (further citations omitted).  To establish a discrimination claim, a plaintiff must show "(1) that she is a member of a protected class, (2) that she is qualified for the position at issue, (3) that she was subject to a materially adverse employment action, and (4) that the circumstances give rise to an inference of invidious discrimination."  *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted).  Defendants' argument is focused on the fourth element.

Second, with regard to his allegations preceding the removal of ODAA's responsibility for investigating EEO complaints, Plaintiff alleges that, during a town hall meeting at the Buffalo DO, employees "voiced criticisms of ODAA" and McGough, an ODAA investigator.  (Dkt. No. 1 at ¶ 25.)  However, Plaintiff's Complaint does not identify the Buffalo DO employees who allegedly criticized ODAA or McGough (or their position[s] with the Department), allege the number of employees who "voiced criticisms," allege whether he (as opposed to ODAA generally) was the target of any criticism, or explain what the criticisms entailed, other than that, according to Woodward, they concerned "the way in which" ODAA "handled" its investigations. (*Id.* at ¶ 29.)  These allegations concerning remarks made by Buffalo DO personnel (who are not alleged to have been decision makers with regard to Plaintiff's duties or employment status) do not plausibly suggest that the ultimate decision to alter ODAA's responsibilities was motivated by discriminatory animus based on Plaintiff's race, or that Mattox or Woodward capitulated to discriminatory attitudes harbored by the unidentified employees who voiced unspecified criticisms of ODAA.  *See, e.g., Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (summary order) ("Perry points to the remarks of an unidentified human resources officer as evidence of a discriminatory motive on the part of NYSARC. Yet there was nothing in the officer's expression of concern to suggest that the employer's decision to alter Perry's duties was motivated by assumptions or attitudes regarding the abilities of persons with epilepsy as a class.") (footnote omitted).  In the absence of any such allegations, Plaintiff's assertion that these criticisms "might be rooted in discrimination" because McGough's job was to investigate EEO complaints, and that the Department then *acceded to* these unspecified views by thereafter tasking OIA with EEO investigations, is too conclusory and speculative to withstand Defendants' motion to dismiss.

-19-

Third, as Defendants correctly note, any "discriminatory attitudes" reflected in statements allegedly made by Buffalo DO personnel in February 2013 (as summarized by Williams and forwarded to Plaintiff, who then forwarded the summary to Woodward and Mattox) do not plausibly suggest racial discrimination directed at Plaintiff on the part of Woodward and Mattox. (Dkt. No. 25 at 8 [Defs.' Reply Memo. of Law].)  As an initial matter, Woodward and Mattox could not have "acceded to the discriminatory attitudes" reflected by such statements because ODAA's investigatory function had been handed off to OIA several months earlier, and Plaintiff had already been notified of his termination.  (Dkt. No. 1 at ¶¶ 26, 40, 45-51.)  Moreover, Plaintiff's Complaint does not allege facts plausibly suggesting that Mattox and/or Woodward endorsed those statements or "acceded" to those employees' sentiments by sending non-minority personnel to the Buffalo DO to conduct classes or focus groups.

Fourth, Plaintiff has not alleged facts plausibly suggesting that he was subjected to disparate treatment as compared to any similarly situated employee outside of his protected group.  "To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects."  *Spencer v. Holley Cent. Sch. Dist.*, 734 F. Supp. 2d 316, 318-19 (W.D.N.Y. 2010) (quoting *Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 [2d Cir. 1997]).  "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical."  *Ruiz*, 609 F.3d at 494 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 [2d Cir. 2000]).  "Ordinarily, '[w]hether two employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss."  *Brown v. Daikin America Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham*,

230 F.3d at 39).  However, "the court 'still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.'"  *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F.Supp.2d 679, 697-98 [S.D.N.Y. 2011]) (granting defendants' motion to dismiss equal protection claim because the complaint was "devoid of factual allegations" regarding any similarly situated individuals).

In this case, Plaintiff's Complaint alleges only that (1) ODAA's investigatory function was transferred to OIA, which, "[u]pon information and belief . . . did not have any racial or ethnic minorities on staff," and (2) although a heavy workload "occasionally" caused ODAA a "delay in responding" to requests from the EEOC and the NYSDHR, "other similarly-sized offices within the Department faced the same issue, but no other office had been stripped of their responsibilities as a result."  (Dkt. No. 1 at ¶¶ 28, 35.)  Setting aside the fact that Plaintiff appears to concede one of Woodward's explanations as to why ODAA was relieved of its investigatory function (i.e., tardiness), Plaintiff's Complaint identifies neither a specific instance of disparate treatment nor a specific, similarly situated comparator who was treated differently.[8]  *See, e.g., Yan v. Ziba Mode Inc.*, 15-CV-0047, 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (dismissing discrimination claim premised in part on disparate treatment where plaintiff's

---

[8]     Plaintiff alleges that "similarly-sized offices," rather than any identified, similarly *situated* individuals, were treated more favorably than he and/or ODAA.  Even assuming that such a comparison may conceivably provide a viable basis for alleging or showing racial discrimination (a proposition for which Plaintiff cites no authority), Plaintiff identifies no particular "office," the racial composition, qualifications, and/or duties of its staff, the manner in which any such office "faced the same issue" as ODAA, or what exactly that "same issue" is. (Dkt. No. 1 at ¶ 35.)

complaint alleged that white employees were treated differently but was "otherwise silent as to these comparators, and fail[ed] to plead any facts regarding how these employees' identities, experience levels, and conduct compared to Plaintiff's") (citations and internal quotation marks omitted); *Ray v. Weit*, 13-CV-6416, 2016 WL 1229056, at *5 (E.D.N.Y. Mar. 28, 2016) (noting that plaintiff failed to allege purported comparators' "job titles, supervisors, or any other facts from which the Court could infer such," or that they "engaged in comparable conduct") (citation and internal quotation marks omitted); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (concluding that plaintiff failed to allege facts plausibly suggesting disparate treatment because, "[w]ithout factual amplification, the general allegation of disparate treatment related to an unspecific class of Caucasian persons is simply not sufficient to 'nudge . . . [her] claims across the line from conceivable to plausible'") (quoting *Twombly*, 550 U.S. at 570).

For all of these reasons, as well as those set forth in Defendants' memoranda of law, the Court concludes that Plaintiff has not alleged facts plausibly suggesting that he was subjected to discrimination based upon his race under § 1981, § 1983, and the NYSHRL.[9]  Accordingly, Defendants' motion to dismiss is granted with respect to Plaintiff's claims of discrimination pursuant to 42 U.S.C. §§ 1981 and 1983, the Equal Protection Clause, and NYSHRL § 296(6).[10]

_____

[9]     Moreover, because the legal standard governing Plaintiff's discrimination claims under § 1981, § 1983, and the NYSHRL also governs his discrimination claim against the Department under Title VII, his failure to allege facts plausibly suggesting that he was subjected to racial discrimination also constitutes an alternative ground for dismissal of that time-barred Title VII claim.

[10]     Because the Court concludes that Plaintiff has failed to allege facts plausibly suggesting he was subjected to discrimination based on his race, "it necessarily follows that the Plaintiff's claims against [individual] employees under an 'aiding and abetting theory' also must

**D.     Whether Plaintiff Has Alleged Facts Plausibly Suggesting that He Engaged in a Protected Activity for Purposes of His Retaliation Claims**

After careful consideration, and for the reasons set forth in Plaintiff's opposition memorandum of law, the Court answers this question in the affirmative.  (Dkt. No. 24 at 14-22 [Plf.'s Opp'n Memo. of Law].)  To those reasons, the Court adds the following analysis.

As an initial matter, Defendants argue only that Plaintiff's Complaint does not allege facts plausibly suggesting that he engaged in a protected activity under §§ 1981 and 1983 or the NYSHRL; in other words, Defendants do not dispute that Plaintiff has adequately pleaded the other elements necessary to state a claim of retaliation.

As with his discrimination claims, "[a]ll of [P]laintiff['s] retaliation claims [pursuant to 42 U.S.C. §§ 1981, 1983, and the NYSHRL] are analyzed pursuant to Title VII principles." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citing *Patterson*, 375 F.3d at 225 ["Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause"]; *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 [2d Cir. 1996] [We consider [plaintiff's] state law claims in tandem with her Title VII claims because New York courts rely on federal law when determining claims under the New York [State] Human Rights Law."]); *accord, Vega v Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) ("[T]he elements of a retaliation claim based on an equal protection violation under §

_____

fail." *Lee v. Winthrop Univ. Hosp.*, 13-CV-5003, 2015 WL 7161955, at *20 (E.D.N.Y. Nov. 13, 2015) (citing, *inter alia, Ying v. City Univ. of New York*, 10-CV-4990, 2011 WL 6337666, at *2 [E.D.N.Y. Dec. 19, 2011] [explaining that, because plaintiff failed to "state a viable claim for sex discrimination, her claim for aiding and abetting sex discrimination fails as well."]). Accordingly, Plaintiff's claims pursuant to New York Executive Law § 296(6), to the extent predicated on a claim that he was subjected to racial discrimination, are also dismissed.

1983 mirror those under Title VII."). To establish a *prima facie* case of retaliation, "a plaintiff must demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore*, 670 F.3d at 157); *accord, Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011); *Hicks*, 593 F.3d at 164.

  With regard to the first element, "[p]rotected activities typically refer to 'actions taken to protest or oppose statutorily prohibited discrimination,' such as 'the filing of a formal complaint with the Equal Employment Opportunity Commission or making complaints to management about an activity that the employee reasonably believes violates the law." *Venezia v. Luxoticca Retail N. Am. Inc.*, 13-CV-4467, 2015 WL 5692146, at *11 (S.D.N.Y. Sept. 28, 2015) (quoting *Gioia v. Forbes Media LLC*, 09-CV-6114, 2011 WL 4549607, at *10 [S.D.N.Y. Sept. 30, 2011], *aff'd*, 501 F. App'x 52 [2d Cir. 2012]). Courts within the Second Circuit have analyzed whether a plaintiff engages in a protected activity (or plausibly alleges doing so) for purposes of a retaliation clam pursuant to § 1981, § 1983, and the NYSHRL under the same standard as whether a plaintiff engages in a protected activity (or plausibly alleges doing so) for purposes of a retaliation claim pursuant to Title VII. *See, e.g., Littlejohn v. City of New York*, 795 F.3d 297, 316, 320 (2d Cir. 2015) (concluding that plaintiff's complaint alleged facts plausibly suggesting that she engaged in a protected activity under Title VII's anti-retaliation provisions, 42 U.S.C. § 2000e-3[a], and that her Title VII and § 1981 retaliation claims therefore should not have been dismissed as to certain defendants); *Nieblas-Love v. New York City Housing Auth.*, 14-CV-5444,

2016 WL 796845, at *6-7 (S.D.N.Y. Feb. 26, 2016) (explaining that, "[f]or each of Plaintiff's [retaliation] claims [pursuant to, *inter alia*, Title VII, § 1981, and the NYSHRL], 'protected activity' means action taken to protest or oppose statutorily prohibited discrimination") (citing, *inter alia*, *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 n.11 [2004]); *Cooper v. New York Dep't of Labor*, 14-CV-0717, 2015 WL 5918263, at *6-7 (N.D.N.Y. Oct. 9, 2015) (Suddaby, J.) (concluding that plaintiff did not allege facts plausibly suggesting that she engaged in a protected activity under Title VII and *Littlejohn*, and dismissing plaintiff's Title VII and NYSHRL retaliation claims).

The issue here is the extent to which Plaintiff's complaints of discrimination qualify as protected activities under the opposition clause, rather than merely falling within his job responsibilities as the director of ODAA.  In his Complaint, Plaintiff alleges that, for at least a portion of the time relevant to his claims, he conducted discrimination investigations and employed other measures to prevent and address discrimination within the Department.  (Dkt. No. 1 at ¶¶ 11-26.)

The Second Circuit's opinion in *Littlejohn*, although primarily concerned with the anti-retaliation provisions of Title VII, is instructive.  "The opposition clause [contained in Section 704(a) of Title VII] makes it unlawful for an employer to retaliate against an individual because she 'opposed any practice' made unlawful by Title VII, while the participation clause makes it unlawful to retaliate against an individual because she 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under' Title VII." *Littlejohn*, 795 F.3d at 316 (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 48 [2d Cir. 2012]); *accord,* 42 U.S.C. § 2000e-3(a). The Court explained that,

> [t]o the extent an employee is required as part of her job duties to
> report or investigate other employees' complaints of discrimination,
> such reporting or investigating by itself is not a protected activity
> under § 704(a)'s opposition clause, because merely to convey
> others' complaints of discrimination is not to oppose practices
> made unlawful by Title VII.  But if an employee–even one whose
> job responsibilities involve investigating complaints of
> discrimination–actively "support[s]" other employees in asserting
> their Title VII rights or personally "complain[s]" or is "critical"
> about the "discriminatory employment practices" of her employer,
> that employee has engaged in a protected activity under § 704(a)'s
> opposition clause.

*Littlejohn*, 795 F.3d at 318 (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 [2d Cir.

1990]).  As noted above, the Second Circuit analyzed both of plaintiff's retaliation

claims–pursuant to Title VII and § 1981–together, concluding that plaintiff adequately alleged

that she engaged in a protected activity for purposes of both claims as to certain defendants.  *Id.*

at 320.

In the present case, construed liberally, Plaintiff's Complaint alleges facts plausibly

suggesting that he did the following: (1) complained to Mattox and Woodward of prevalent

discrimination in the Department (citing two specific examples in separate Department offices);

(2) reinforced the imperative that the Department had to be "willing to take action" to address

these discrimination issues; (3) conveyed his good-faith concerns that complaints directed at

McGough and ODAA may have originated with individuals who McGough was already tasked

with investigating for discrimination-related conduct; and (4) after its investigatory function was

taken from it and given to OIA (which had no racial or ethnic minorities on staff), advocated for

the reinstatement of that function with ODAA.  (*See generally* Dkt. No. 1.)[11]  On that basis,

---

[11]      In light of these allegations, the Court rejects Defendants' argument that Plaintiff
has merely expressed "disagreement with internal complaint-handling procedures[.]"  (Dkt. No.

Plaintiff has done more than merely convey others' complaints concerning discrimination pursuant to the responsibilities attendant to his role with ODAA.  *See Littlejohn*, 795 F.3d at 319 (noting that plaintiff was "not simply conveying others' complaints of discrimination," but rather "was complaining about what she believed was unlawful discrimination in [a] personnel decision-making process" during a merger); *accord, e.g., Hagan v. City of New York*, 39 F. Supp. 3d 481, 501 (S.D.N.Y. 2014) (concluding that plaintiff plausibly pleaded a retaliation claim where her "allegations suggest that . . . she advocated for systemic reform and the rights of minority employees and, in so doing, became a thorn in the side of officials who wanted to persist in unlawful discriminatory practices.  This is quintessential opposition activity that goes beyond mere participation in her role as an EEO Officer."); *Adams v. Northstar Location Servs., LLC*, 09-CV-1063, 2010 WL 3911415, at *4 (W.D.N.Y. Oct. 5, 2010) (concluding that plaintiff's assertion to management "that it would be 'inappropriate' to fire certain minority employees" constituted a protected activity, but that plaintiff's "actions in investigating [a] complaint of race-based harassment would not constitute protected activity" because those actions were within the scope of her employment as human resources director); *cf. Cooper*, 2015 WL 5918263, at *6 (explaining that plaintiff alleged facts plausibly suggesting that she "personally complained" of, and was "critical" about, "proposed changes to complaint-handling procedures within state agencies," but that plaintiff failed to allege facts plausibly suggesting that defendants "were engaging in unlawful discrimination through the new complaint-handling procedures").

---

25 at 6 [Defs.' Reply Memo. of Law] [citing *Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 786 (11th Cir. 2012) (summary order)].)

For these reasons, as well as those set forth in Plaintiff's opposition memorandum of law, the Court concludes that Plaintiff has, albeit barely, alleged facts plausibly suggesting that he engaged in a protected activity for purposes of his retaliation claims. Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claims against Mattox and Woodward under §§ 1981 and 1983, as well as his claim pursuant to the aider and abettor provision in New York Executive Law § 296(6) in connection therewith, is denied.

### E.   Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Woodward Was Personally Involved in Any Unlawful Retaliatory Conduct

After careful consideration, and for the reasons set forth in Plaintiff's opposition memorandum of law, the Court answers this question in the affirmative. (Dkt. No. 24 at 9-11 [Plf.'s Opp'n Memo. of Law].) To those reasons, the Court adds the following analysis.

"In contrast to Title VII, individual liability is available under the NYSHRL, 42 U.S.C. § 1983, and 42 U.S.C. § 1981." *Rodriguez v. Glen Cove City Sch. Dist.*, 14-CV-3815, 2016 WL 951524, at *6 (E.D.N.Y. Mar. 8, 2016). "Individuals may be personally liable under the NYHRL and § 1981 where the individual possessed power to do more than carry out personnel decisions made by others, or is shown to have actually participate[d] in the conduct giving rise to a discrimination claim." *Karam v. Cty. of Rensselaer, New York*, 13-CV-1018, 2016 WL 51252, at *18 (N.D.N.Y. Jan. 4, 2016) (D'Agostino, J.) (citations and internal quotation marks omitted); *accord, Allessi v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F. Supp. 3d 221, 226 (W.D.N.Y. 2014) (explaining that "a state employee may be held liable in his or her individual capacity under [New York] Executive Law § 296(6) for aiding, abetting, inciting, compelling or coercing a discriminatory act forbidden by NYSHRL."); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015) ("[W]e hold that a state employee may bring a

-28-

retaliation claim under § 1983 against a supervisor who, acting under color of law, retaliates against him for opposing discrimination in the terms of his employment."); *Littlejohn*, 795 F.3d at 314 ("An individual may be held liable under §§ 1981 and 1983 only if that individual is personally involved in the alleged deprivation.") (citations and internal quotation marks omitted); *Vosburgh v. Amer. Nat. Red Cross*, 08-CV-0653, 2014 WL 4826688, at *13 (N.D.N.Y. Sept. 29, 2014) (Kahn, J.) ("To be found liable under [New York Executive Law § 296(6)], an individual need not have supervisory or hiring and firing power but still must have *actually participated* in the conduct giving rise to the claim of discrimination and engaged in direct, purposeful, participation."); *Frank v. Lawrence Union Free Sch. Dist.*, 688 F. Supp. 2d 160, 174 (E.D.N.Y. 2010) (noting that "the NYSHRL's aiding and abetting section imposes individual liability on a person who 'actually participates' in the improper conduct [and t]he New York Court of Appeals has never held otherwise").  Personal involvement for purposes of a NYSHRL claim will suffice to establish personal involvement in behavior unlawful under 42 U.S.C. § 1983.  *See Feingold*, 366 F.3d 138, 160 (2d Cir. 2004) ("Feingold has presented sufficient evidence to permit the conclusion that all of the named individual defendants were personally involved in behavior unlawful under the NYSHRL. . . . He has also, therefore, presented sufficient evidence to permit the conclusion that they were personally involved in behavior that violates Section 1983.") (citations and internal quotation marks omitted).  Personal involvement may be established by evidence showing that the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising

> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference . . . by failing to act on
> information indicating that unconstitutional acts were occurring.

*Littlejohn*, 795 F.3d at 314 (quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365

F.3d 107, 127 [2d Cir. 2004]).

Courts in this Circuit have found personal involvement to exist where, for example, the

individual defendant (1) signed a written notice that the plaintiff would not be reinstated, or (2)

was involved in the decision to terminate the plaintiff.  *See, e.g., Pinero v. Long Island State*

*Veterans Home*, 375 F. Supp. 2d 162, 169 (E.D.N.Y. 2005) (finding defendant was personally

involved where the complaint alleged that defendant "was the individual that signed the letter

that informed [plaintiff] that she would not be reinstated" and "was personally involved in the

decision to terminate the Plaintiff"); *Duse v. IBM Corp.*, 748 F.Supp. 956, 968 (D.Conn. 1990)

(finding genuine issue of fact where a dispute existed regarding whether supervisor did more than

just sign a termination letter).  On the other hand, courts have also held that "[i]nvolvement in

discussions that lead to a decision is not personal involvement under § 1983."  *Conklin v. Cty. of*

*Suffolk*, 859 F. Supp. 2d 415, 441 (E.D.N.Y.2012) (quoting *Zdziebloski v. Town of E. Greenbush,*

*N.Y.*, 336 F. Supp. 2d 194, 202 [N.D.N.Y. 2004] [Kahn, J.]).

In this case, when construed liberally, the crux of Plaintiff's allegations related to

Woodward (his direct supervisor) is that Woodward summarily advised Plaintiff that ODAA

would no longer be conducting EEO investigations, a function which was handed off to the OIA

(an office staffed by white personnel) after employees in the Buffalo DO criticized ODAA.[12]

---

[12]    Plaintiff does not allege facts plausibly suggesting that Woodward was personally
involved in the decision to terminate Plaintiff's employment or Mattox's threat to provide him
with a poor recommendation, or that Woodward acted improperly (or failed to act) with respect

(Dkt. No. 1 at ¶ 26 [Plf.'s Compl.]; *accord,* Dkt. No. 24 at 9-11 [Plf.'s Opp'n Memo. of Law].)

Moreover, Plaintiff alleges that Woodward disregarded his concerns (apparently without further

inquiry) that complaints lodged against ODAA and McGough may have been racially motivated.

(Dkt. No. 1 at ¶ 33.)  Based upon the foregoing, the Court concludes that Plaintiff has, again

albeit barely, alleged facts plausibly suggesting that Woodward was personally involved in

conduct alleged to have been undertaken for the purpose of unlawfully retaliating against

Plaintiff.  Accordingly, Defendants' motion to dismiss Plaintiff's claims as to Woodward on this

ground is denied.

ACCORDINGLY, it is

ORDERED that Defendants' motion to dismiss Plaintiff's Complaint for failure to state a

claim upon which relief can be granted (Dkt. No. 17) is **GRANTED in part and DENIED in**

**part;** and it is further

ORDERED that the following claims are **DISMISSED** from Plaintiff's Complaint (Dkt.

No. 1):

(1)  Plaintiff's discrimination claim against the Department pursuant to Title VII;

(2)  Plaintiff's retaliation claim against the Department pursuant to Title VII;

(3)  Plaintiff's discrimination claims against Defendant Mattox pursuant to 42 U.S.C. §§

1981 and 1983, the Equal Protection Clause of the U.S. Constitution, and the aider and

abettor provision pursuant to New York State Human Rights Law § 296(6); and

---

to the written summary drafted by Williams and forwarded by Plaintiff.  Moreover, Plaintiff does
not allege facts plausibly suggesting that his receipt of a negative performance evaluation in May
2013 was the result of any unlawful conduct by Woodward; rather, Plaintiff alleges that, from all
appearances, Woodward *did not* prepare, or even read, the negative performance evaluation
(which post-dated Plaintiff's notice of termination).  (Dkt. No. 1 at ¶¶ 59-60.)

(4)  Plaintiff's discrimination claims against Defendant Woodward pursuant to 42 U.S.C. §§ 1981 and 1983, the Equal Protection Clause of the U.S. Constitution, and the aider and abettor provision pursuant to New York State Human Rights Law § 296(6); and it is further

**ORDERED** that **SURVIVING** Defendants' motion are Plaintiff's retaliation claims against Defendants Mattox and Woodward pursuant to 42 U.S.C. §§ 1981 and 1983 and the aider and abettor provision pursuant to New York State Human Rights Law § 296(6); and it is further

**ORDERED** that Defendant New York State Department of Taxation and Finance is dismissed from this action; and it is further

**ORDERED** that Defendants Mattox and Woodward file an answer to Plaintiff's Complaint within **FOURTEEN (14) DAYS** of the date of this Decision and Order pursuant to Fed. R. Civ. P. 12(a)(4)(A).  This case is referred back to Magistrate Judge Hummel for a Rule 16 conference and the scheduling of pretrial deadlines.

Dated:  July 5, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge